OPINION OF THE COURT
Per Curiam.
Final judgment, entered on or about August 11, 2010, reversed, petition reinstated, and matter remanded for a new trial consistent with this opinion, with $30 costs to abide the event.
The evidence presented at the trial of this nonprimary residence holdover proceeding showed, and it is not seriously disputed, that tenant made only minimal, daytime use of the East 56th Street stabilized apartment here at issue for the IV2year period between February 2007 and his receipt of the underlying notice of nonrenewal in July 2008, living instead in *86 an East 91st Street apartment leased by his long-term companion. The central focus of the trial was whether tenant’s acknowledged absence was excusable for purposes of nonprimary residence analysis, with respondent offering what his attorney accurately described as “a very complicated story” in defense of landlord’s possessory claim. Of the various explanations provided by tenant for his underutilization of the subject apartment, two resonated with the trial court: that tenant’s apartment was “too cluttered to live in” from February 2007 to sometime in “late 2007” as a result of landlord’s building-wide, terrace repair project, which, it is alleged, forced tenant to store terrace furniture and other “outdoor” items within the apartment; and that tenant thereafter was unable to “live alone” in his apartment due to his “fragile psychological condition.” Upon our review of the record, we conclude that the court’s finding in favor of tenant on the former issue was unsupported by legally sufficient evidence, and that the court’s finding for tenant on the latter issue was tainted by evidentiary error and did not comport with the weight of the evidence.
With respect to the terrace furniture, no reasonable view of the evidence can support a finding that tenant’s absence from the apartment — a 750-square-foot, one-bedroom unit — was attributable to, much less legally excused by, any clutter condition that may have been caused by the landlord’s terrace repairs. Significantly, the record contains no indication that tenant ever complained to the landlord of any such clutter condition, nor was any competent showing made that the presence of outdoor furniture, pots, planters and the like that previously adorned tenant’s small terrace* substantially interfered with his use of the apartment interior. To the contrary, tenant’s testimony showed little more than that the displaced terrace furniture “block[ed]” his living room couch, hardly the type of condition that would “amount to a substantial and material deprivation of use and enjoyment of the premises” sufficient to excuse tenant’s absence therefrom (see East End Temple v Silverman, 199 AD2d 94, 94 [1993]; cf. Ascot Realty LLC v Richstone, 10 AD3d 513 [2004], lv dismissed 4 NY3d 842 [2005]).
Turning to the issue of tenant’s psychological state, the court should not have granted tenant’s mid-trial application to present a psychiatric expert, over landlord’s strong objection, where the issue of tenant’s claimed mental illness was not raised in his answer, where tenant falsely stated at deposition that he *87 was not under the care of a psychiatrist in July 2008 (at or around the time he received the landlord’s nonrenewal notice), and where tenant gave no indication of his intent to call an expert witness at the start of trial or at any time during the landlord’s case-in-chief (see Caraballo v Paris Maintenance Co., 2 AD3d 275 [2003]; Germe v City of New York, 211 AD2d 480, 482-483 [1995]). Nor was the clear prejudice landlord suffered as a result of the surprise introduction of a medical expert eliminated by the court’s offer of time for landlord to identify and secure a competing expert or otherwise “rebut” tenant’s expert (see Green v William Penn Life Ins. Co. of N.Y., 74 AD3d 570, 578 [2010, Saxe, J. concurring]). “In the midst of trial, attempting that task would entail an unacceptable diversion of counsel’s attention . . . Counsel’s decision to decline the illusory offer of time was simply realistic, and should not be interpreted to mean that [landlord] was not prejudiced.” (Id.)
Even putting aside the evidentiary problem, we find, based on our independent weighing of the evidence, that the court placed undue reliance on tenant’s professed mental illness and his stated fear of “living alone” in concluding that tenant’s prolonged absence from the subject apartment was excusable under rent stabilization (see Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [2]). Without intending to minimize the psychological challenges allegedly faced by tenant, we find no cogent explanation in the present record as to why tenant’s post-traumatic stress disorder — said to have initially developed following a traumatic event in 1996 — and concomitant fear of living alone were more effectively allayed by tenant’s “temporary” relocation to his companion’s nearby apartment than by the companion’s relocation to tenant’s apartment, or how tenant was able to overcome that previously debilitating fear in resuming full-time occupancy of his own apartment within days of receiving the landlord’s nonrenewal notice.
In view of the evidentiary error previously discussed, and since the weight of the evidence bearing on tenant’s primary residence (or lack thereof) does not support the court’s verdict, a new trial is warranted (see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]).
Shulman, J.E, Schoenfeld and Torres, JJ., concur.

 The dimensions of the apartment terrace were variously estimated at trial to be somewhere between two feet by eight feet, and five feet by eleven feet.